Complaint pursuant to 42 USCA 1983 by Gordon Anderson    06/04/02    page 1

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

GORDON ANDERSON, CRYSTAL ANDERSON ] no: 99 C 0004
]
Plaintiffs ]
] Hon: David Coar
vs ]
] Presiding
City of Chicago, et al ]
]
Defendants ]

**FILED**
JUL 8 2002
Judge David H. Coar
United States District Cou[rt]

**DOCKETED**
JUL 0 9 2002

Second AMENDED

## COMPLAINT PURSUANT TO 42 USCA 1983

Gordon Anderson after being duly sworn deposes and states as follows:

1. Jurisdiction is had herein pursuant to 28 USCA 1343, and the jurisdiction that the United States has mandated to redress the situation wherein persons acting under color statute act to deny a citizen of his privileges and immunities protected by the United States Constitution. The said statute reads as follows:

   § 1343. Civil rights and elective franchise

   (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

   (1) **To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;**

   (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any



Complaint pursuant to 42 USCA 1983 by Gordon Anderson    06/04/02    page 2

> Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
>
> (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.
>
> (b) For purposes of this section--
>
> (1) The District of Columbia shall be considered to be a State; and
>
> (2) any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
>
> 28 USCA s 1343

2. That amongst the Statutes enacted by the United States Congress is 42 USCA 1983, which in words and phrases states:

   > **Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,** except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of t.)
   >
   > 42 USCA s 1983

3. **That on or about January 31, 1998** the defendants, and each of them, including the City of Chicago, a Municipal Corporation, by its agents, servants, and by its police officer defendants named herein entered into an agreement amongst themselves and among other persons including the City of Chicago (by its agents and servants) to deprive Gordon Anderson and Crystal Anderson of their Civil Rights protected by <u>the Fourth, Fifth And Fourteenth Amendments To The United States Constitution.</u>  It is believed and therefore alleged that the Police officers who participated herein (hereinafter referred to as defendant police officers) are Officers Janine Hermonn (star 118574), Mark George (12441) Jesse Eng (17649], Conroy (9514), Michael Rice (11516), James Tarara (1740),

2

Complaint pursuant to 42 USCA 1983 by Gordon Anderson    06/04/02    page 3

and Joseph Gawlik (1509)  The participating police offices are named as defendants herein. Anderson specifically avers that these police officers agreed amongst themselves, the City of Chicago, and with other persons – as yet unknown, or not subject to suit, and with a citizen named Dane Placko to engage in actions which would cause Anderson to be arrested, tried and convicted of criminal conduct and lose his liberty.

4. That in pursuant of their agreement the defendants caused a criminal complaint to be sworn by citizen Dane Placko, wherein in words and phrases Anderson was wrongfully accused of a criminal assault on one Dane Placko. <u>Mr. Placko is not a party to this lawsuit as he has been dismissed by order of this Court</u>. A separate lawsuit has been filed against Mr. Placko in the Circuit Court of cook County, Illinois based upon malicious prosecution as Mr. Anderson was found not guilty of the wrongful charges.. The allegations of the criminal complaint were false and untrue and prepared with the express intention of providing color of authority and legality for the taking of the plaintiffs' valuable property rights and liberty rights as hereinafter alleged.

5. This aforesaid criminal complaint was sworn to and drafted by one or more of the defendants, as an overt action pursuant to the agreement of the co-conspirators, after Anderson was arrested, his home invaded and searched, and his civil rights violated. Mr. Anderson was subjected to a large number of charges. He was (a) charged by the State of Illinois with a **criminal assault** charge, (b)he was charged by the City of Chicago with a **criminal contempt** charge (94 MC1` 347520) seeking to have plaintiff Anderson held in contempt for having 32 unlicensed weapons and for various offenses against Mr. Placko. (c) In addition, the City of Chicago duplicated the petition to hold plaintiff Anderson in contempt by filing **32 ordinance violation charges** against defendant Anderson. <u>It is believed that all the defendants acted in concert to deprive Anderson and his daughter of their civil rights</u>[1].

6. That Gordon Anderson's rights were violated by his false arrest in his home without a warrant, and without cause. In addition Anderson's rights were

violated by the discriminatory prosecution against him by the City of Chicago (acting by its agents and the defendant police officers).

7. That Anderson was unlawfully confronted in his own home, by gun wielding individuals who represented that they were police officers of the City of Chicago. These defendants entered his home, searched the same, removed his antique weapon collection, restrained him, abused him and otherwise denied him his rights, privileges and immunities guaranteed by the United States Constitution all without a warrant and upon information and belief based upon the sworn testimony of one of the officers, prior to any criminal complaint signed by Mr. Packo or anyone else.

8. That plaintiff Crystal Anderson was deprived of her rights when the same police officers entered the close of her home without permission and subjected her to mental abuse, fright and serious concern for her diabetic father's health.

9. That in particular on January 31, 1998 the City of Chicago acting by the defendant police officers, who were **without a warrant,** and prior to any sworn complaint being submitted to a magistrate or any Judge of the Circuit Court of Illinois, or **even a complaint being sworn to,** unlawfully entered onto the premises occupied and owned by the plaintiffs searched and seized personal property belonging to the defendant Gordon Anderson, and wrongfully arrested the defendant.[23]

---

[2] Gordon Anderson contends that he was not told on what charge he was arrested upon until he was hauled into Court on charges of a Municipal ordinance violation that his antique gun collection was not registered. He was then told that he was being arrested for assault. The assault allegedly occurred on or about December 21, 1997.

[3] The alleged assault charge as memorialized in the police reports (group exhibit 3) upon which Sgt. Gawlik testifies they relied on in making the arrest is so defective as to be a nullity. According to the police reports, Mr. Anderson is reported as having stated that in the future at some unspecified time he would "f--- over" Mr. Placko. Mr. Placko ultimately signed the complaint upon which the assault charge was tried and the words are in the present tense. In a companion pleading and complaint by Mr. Placko an entirely different set of words is alleged. Mr. Placko's credibility is impeached by the sworn oral and written statements he makes. The

4

Complaint pursuant to 42 USCA 1983 by Gordon Anderson   06/04/02   page 5

10. That according to the sworn testimony of Police officer Gawlik, the transcript of said testimony is attached to the original complaint as exhibit 1, the defendant police officers went to Anderson's home to arrest him for the assault that the defendant Placko untruthfully claimed had occurred on December 21, 1997 at 2330 hours.  Based upon the **ex-post facto** false statements by citizen Placko, Gawlik swears that he and other police officers affected an arrest.

11. That pursuant to the agreement to deprive the plaintiffs of their civil rights, and a**fter the wrongful arrest** of Anderson has been consummated, citizen Dane Placko signed a complaint alleging untruthfully that Anderson had assaulted him by using the words:  " I am going to fuck you over."    The defendant Police officers were all aware that prior to the execution of the sworn complaint by Dane Placko, Mr. Placko had submitted to them contradictory statements on or about December 21, 1997.  These statements were memorialized in certain police reports attached to the original complaint filed herein as exhibit 3.  The statement of Placko to the police (exhibit 3) differed from the statement sworn to by Placko.

12. The police reports (exhibit 3) of the 21st of December 1997 reported that Mr. Placko had claimed that on December 21, 1997 Mr. Anderson had made a future threat and had used the words:  **" when this order expires, I am going to fuck you over."**    The sworn complaint executed on January 31, 1998 and filed in the Circuit Court is attached hereto as exhibit 2.   The relevant police reports are attached to the original complaint filed herein as group exhibit 3.    A copy of the State of Illinois's discovery disclosure is attached to the original complaint filed herein as exhibit 4.    Exhibits 1, 2, 3, and 4 are all incorporated by reference and made part hereof as if set forth in detail.  These exhibits are attached to the original complaint filed herein.

---

```
event is suggested to have occurred at 2300 hours on December 21,
1998.   When Mr. Placko testified he testified that the event took
place on December 20, 1998.   The Discovery furnished by the State
discloses that the event allegedly took place on December 21, 1998
at 2300 hours.    It also disclosed in the police report that the
police officers took information as to the alleged activity prior to
the alleged assault-taking place.
```

5

13. That at all times defendants and each of them well knew that there was no reasonable or probable cause for the arrest[4] of the defendant Gordon Anderson

---

[4] 725 ILCS 5/111-1

§ 111-1. Methods of prosecution.
When authorized by law a prosecution may be commenced by:
(a) A complaint;
(b) An information;
(c) An indictment.
Upon commencement of a prosecution for a violation of Section 11-501 of The Illinois Vehicle Code, [FN1] or a similar provision of a local ordinance, or Section 9-ctim" shall mean an individual who has suffered personal injury as a result of the commission of a violation of Section 11-501 of The Illinois Vehicle Code, or a similar provision of a local ordinance, or Section 9-3 of the Criminal Code of 1961, as amended, relating to the offense of reckless homicide. In regard to a violation of Section 9-3 of the Criminal Code of 1961, as amended, relating to the offense of reckless homicide, "victim" shall also include, but not be limited to, spouse, guardian, parent, or other family member.
IL ST CH 725 s 5/111-1

725 ILCS 5/111-3

§ 111-3. Form of charge. (a) A charge shall be in writing and allege the commission of an offense by:
(1) Stating the name of the offense;
(2) Citing the statutory provision alleged to have been violated;
(3) Setting forth the nature and elements of the offense charged;
(4) Stating the date and county of the offense as definitely as can be done; and
(5) Stating the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty.
(b) An indictment shall be signed by the foreman of the Grand Jury and an information shall be signed by the State's Attorney and sworn to by him or another. **A complaint shall be sworn to and signed by the complainant;** Provided, however, that when a citation is issued on a Uniform Traffic Ticket or Uniform Conservation Ticket (in a form prescribed by the Conference of Chief Circuit Judges and filed with the Supreme Court), the copy of such Uniform Ticket which is filed with the circuit court constitutes a complaint to which the defendant may plead, unless he specifically requests that a verified complaint be filed.
(c) When the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant. However, the fact of such prior conviction and the State's intention to seek an enhanced sentence are not elements of the offense and may not be disclosed to the jury during trial unless otherwise

Complaint pursuant to 42 USCA 1983 by Gordon Anderson   06/04/02   page 7

for assault on January 31, 1998. **Forty-one days** had elapsed since the alleged assault! on Mr. Placko by the words and phrase stated in the future tense.   Each of the defendants was aware that in order for the plaintiff Gordon Anderson to be guilty of an assault[5], Anderson had to intend by his statements and/or actions to generate a reasonable fear of imminent danger of receiving bodily harm in Dane Placko.   The words that Dane Placko swore to were " when this order expires I am going to fuck you over" these words imparted a 'future' threat at best[6].   The words contained in the case reports were 'future tense' and therefore could not place any reasonable relevant each of the defendants, including the City of Chicago, person in imminent fear of bodily harm.   The experienced police officers, and in particularly Gawlik, it is believed and therefore alleged had actual knowledge of the law of simple assault.   **Not one of the defendant police officers witnessed the alleged assault or had any information concerning the assault except from the hearsay declarations of Dane Placko reported in the Police reports attached as group exhibit 3 to the original complaint filed herein.**

---

permitted by issues properly raised during such trial. For the purposes of this Section, "enhanced sentence" means a sentence which is increased by a prior conviction from one classification of offense to another higher level classification of offense set forth in Section 5-5-1 of the "Unified Code of Corrections", approved July 26, 1972, as amended; [FN1] it does not include an increase in the sentence applied within the same level of classification of offense.
(d) At any time prior to trial, the State on motion shall be permitted to amend the charge, whether brought by indictment, information or complaint, to make the charge comply with subsection (c) of this Section.
(e) The provisions of Article 33B of the Criminal Code of 1961, as amended, shall not be affected by this Section.

[5] Assault was the pretextual basis for the 'raid' on Anderson's dwelling and the intrusion without a warrant in violation of the Fourth and Fourteenth Amendment on Anderson's home.
[6] **Anderson denies that he said any words to Dane Placko**.   He asserts that Dane Placko on December 20, 1997 was screaming obscenities at him.   The diabetic victim (Anderson) who had been washing dishes in his kitchen, did not say a word, and instead retreated to his bedroom where he went to sleep.   This was not the first time that Placko had accosted the plaintiff with rude and obscene words.

7

Complaint pursuant to 42 USCA 1983 by Gordon Anderson   06/04/02   page 8

14. That Dane Placko, who is employed as a reporter for a major news network, and who represented to Anderson that he has 'judges in his pocket' and the 'political muscle to drive Anderson from the neighborhood,' as his part of the conspiracy it is believed and therefore alleged to have enrolled in the aforesaid conspiracy to violate Mr. Anderson's rights certain political figures, and others who are named herein as **unknown conspirators**.   As these individuals may have limited immunity further investigation is required as to whether or not they are to be named specifically herein and prosecuted civilly for their part.

15. that as its part in carrying out the agreement to deprive Anderson of his civil rights, servants and agents of the defendant City of Chicago promulgated a document entitled, "City's Amended Petition for a Rule" a copy of which is attached to the original complaint filed herein and made part hereof as exhibit 5.   This document to wit: "City's Amended Petition for a Rule" has as its core the charge that plaintiff Anderson had allegedly assaulted Placko[7] and that the plaintiff had in his possession 32 firearms in violation of 32 separate municipal ordinances.   The petition to hold Anderson in contempt duplicated the violation charges promulgated by the defendant police officers[8].   That further, as its part in the agreement aforesaid the City of Chicago, by its agents and servants (some of whom are clothed with immunity), improperly seperatedly and duplicating the charges in the criminal contempt petition, again charged Mr. Anderson with 32 ordinance violations.   These duplicate ordinance violation charges were brought, well knowing that prior to the invasion of Anderson's

---

[7] In **paragraph 10 of exhibit 5** the December 21, 1997 incident is described by the Corporation Counsel of the City of Chicago, to wit:

> "10.   On one such occasion the defendant threatened Dan Placko and stated that the Plackos should "wait and see what happens of January 27th,".....
> " 11.   This contact with the defendant....led Dane Placko to report defendant's conduct to the Chicago Police Department on December 21, 1997, and subsequently sign a complaint naming Gordon Anderson as the offender in an assault."

Exhibit 5 was not sworn to be anyone including Mr. Placko.

[8] These charges were tried separately after an extra-ordinary delay. The recent conviction of the plaintiff on some of the charges has promulgated

8

home and the seizure of the collection that Anderson had exhibited to agents and servants of the defendant City of Chicago his collect.  The said ordinance charges were brought by the defendant City of Chicago well-knowing that the City ordinances were not intended to regulate or license antique collections of anything.

16. That it is therefore believed and therefore alleged upon this belief[9] that as part of the agreement of the defendants, and each of them, to deprive the defendants of their civil rights, trial of these ordinance violations was delayed for many years, and only after plaintiff's attorney of record had retired, his expert witness had left the State, the City of Chicago (additionally, as part of its part in the agreement to deprive Anderson of his Civil rights) disposed of the entire collection, and Anderson became impoverished,[10], the trial of the issues specifically involving the ordinance violations was moved to trial. Anderson represented himself in proceedings and he was acquitted of 11 of the charges, one charge was withdrawn and on the second round involving the very same issues, he was wrongfully convicted of 20 ordinance violations.

17. **Resolution of criminal charges for assault**.  That on December 7,8, and 9, 1998, upon the demands of Anderson for a Speedy trial, a Jury trial was held in the Circuit Court of Cook County on the issues raised by the sworn complaint sworn to by Placko (exhibit 2). **On December 9, 1998 a jury returned a verdict of not guilty upon the charge. The jury verdict exonerated Anderson and he was then and there discharged.**

---

the Corporation Counsel of the City of Chicago to request dismissal of the pending complaint herein.

[9] And the prior unsuccessful attempts at prosecution of the plaintiff Anderson for criminal contempt and for the bogus assault charge – and the secret destruction of the antique collection (see exhibit a). It appears that even the assistant corporation counsel charged with the prosecution of the case appears to have not been informed of the destruction for almost a year.

[10] Even absent a specific request, prosecution has constitutional duty to turn over exculpatory evidence that would raise reasonable doubt about defendant's guilt; however, the right is not absolute because, whatever duty Constitution imposes on state to preserve evidence, that duty is limited to evidence that might be expected to play a significant role in defendant's defense. People v. Madison, App. 1 Dist.1994, 202 Ill.Dec. 338, 264 Ill.App.3d 481, 637 N.E.2d 1074, appeal denied 205 Ill.Dec. 177, 157 Ill.2d 513, 642 N.E.2d 1294.

9

Complaint pursuant to 42 USCA 1983 by Gordon Anderson   06/04/02   page 10

18. **2nd Resolution of criminal charges for assault, and 1st resolution of ordinance violations.** That on March 31, 1999 the Circuit Court **dismissed** the City of Chicago' amended Petition for a Rule in case 94 MC! 347520.

19. **2nd Resolution of ordinance violations.** That on or about February 21, 2002, Anderson was **found not guilty** of eleven City of Chicago ordinances (one withdrawn), and was found guilty of twenty duplicated ordinance violations.

20. That as a proximate cause of the concerted actions of the defendants, the plaintiffs were damaged in that they were deprived of their right to be safe and secure in their home, free from government intrusion, personal property was illegally seized and destroyed having a value in excess in $100,000.00, plaintiff Anderson had to endure the illegal prosecution of a crime, and a criminal contempt proceeding and numerous duplicated ordinance violations, he was denied a his right to fair trial on the duplicated ordinance violations – in that he was subjected to the intentional destruction of the evidence – and was denied his rights, privileges and immunities protected the First, Second, Fifth and Fourteenth Amendments to the United States Constitution. In addition, the defendant Gordon Anderson was subject to the humiliation of unfair and improper criminal prosecutions, denial of <u>Brady v. Maryland</u> rights, aggravation of his diabetic condition[11] and impairment of his health, and other deprivations of civil rights all to his damages in an amount in excess of One Million dollars.

Wherefore the plaintiff prays for the following relief:

1. That this Court award compensatory and punitive damages to the plaintiffs Gordon Anderson and Crystal Anderson, and against the defendants and each of them in an amount to properly redress the plaintiffs for the deprivation of their civil rights

2. That the costs of these proceedings and reasonable attorney fees be assessed against the defendants and each of them jointly and severally pursuant 42 USC 1988.

### Count 2

---

[11] During the trial of the ordinance violation case, Anderson was observed by an assistant corporation counsel to be in distress and she called 911. The trial was interrupted and Anderson was hospitalized. The case was subsequently restarted and new jury impaneled.

That for Count 2 the plaintiff Gordon Anderson states:

1. That on or about January 31, 1998 the defendant City of Chicago instituted a series of prosecutions of the plaintiff Gordon Anderson for violations of its municipal ordinances involving the possession of alleged firearms.

2. That on or about January 31, 1998 the City of Chicago as alleged in Count 1, which Count is incorporated by reference and made part hereof as if set forth in detail, took possession and control of the evidence required to prosecute Mr. Anderson for ordinance violations, which evidence included a very valuable antique firearm collection.

3. That on or about March 31, 1999 the prosecution of the plaintiff Gordon Anderson for contempt of the court for the alleged possession of certain firearms was dismissed by the Circuit Court of Cook County, Illinois in case 94 MC1 347520. The antique firearm collection was potential evidence in the said proceeding. The City of Chicago maintained possession of the potential evidence.[12]

4. That at all times relevant the actual items that the City of Chicago took possession of by their seizure on or about January 31, 1998 were relevant and important evidence that was vital to the defense of the ordinance violations, and at all times relevant the said items seized had substantial value in excess of One hundred thousand dollars as an antique weapons collection and each individual item had a value in excess of one thousand dollars or more.

5. That at all times relevant as the prosecutor of alleged ordinance violations that defendant City of Chicago had a duty to preserve all evidence, and especially all items seized from a defendant that allegedly violated the said ordinances. (see SCT Rule 214)[13]

---

[12] The antique firearm collection was in part brought to Court for the trial of the assault case and the States Attorney placed collectibles on the counsel table for exhibition to the jury. Anderson objected to this display and was sustained by the Court and the potential evidence was removed from the Courtroom. Thereafter, the City of Chicago maintained possession of the collection.

[13] Rule 412. Disclosure to Accused

Complaint pursuant to 42 USCA 1983 by Gordon Anderson   06/04/02   page 12

---

(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

(i) the names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements. Upon written motion of defense counsel memoranda reporting or summarizing oral statements shall be examined by the court in camera and if found to be substantially verbatim reports of oral statements shall be disclosed to defense counsel;

(ii) any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgment of such statements;

(iii) a transcript of those portions of grand jury minutes containing testimony of the accused and relevant testimony of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial;

(iv) any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons, and a statement of qualifications of the expert;

(v) any books, papers, documents, photographs or tangible objects which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belong to the accused; and

(vi) any record of prior criminal convictions, which may be used for impeachment, of persons whom the State intends to call as witnesses at the hearing or trial.

If the State has obtained from the defendant, pursuant to Rule 413(d), information regarding defenses the defendant intends to make, it shall provide to defendant not less than 7 days before the date set for the hearing or trial, or at such other time as the court may direct, the names and addresses of witnesses the State intends to call in rebuttal, together with the information required to be disclosed in connection with other witnesses by subdivisions (i), (iii), and (vi), above, and a specific statement as to the substance of the testimony such witnesses will give at the trial of the cause.

(b) The State shall inform defense counsel if there has been any electronic surveillance (including wiretapping) of conversations to which the accused was a party, or of his premises.

(c) Except as is otherwise provided in these rules as to protective orders, the State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or which would tend to reduce his punishment therefor. The State shall make a good-faith effort to specifically identify by description or otherwise any material disclosed pursuant to this section based upon the information available to the State at the time the material is disclosed to the defense. At trial, the defendant may not offer evidence or otherwise communicate to the trier of fact the State's identification of any material or information as tending to negate the guilt of the accused or reduce his punishment.

(d) The State shall perform its obligations under this rule as soon as practicable following the filing of a motion by defense counsel.

(e) The State may perform these obligations in any manner mutually agreeable to itself and defense counsel or by:

Complaint pursuant to 42 USCA 1983 by Gordon Anderson   06/04/02   page 13

6. That on or about June 2000 the defendant City of Chicago acting by its agents and servants, breached their duty to the plaintiff by secretly, without prior permission of the Circuit Court, and without notice to Gordon Anderson destroyed the entire firearms collection.

7. The defendant City of Chicago **concealed the destruction** of evidence for approximately one year, until forced by the Circuit Court to disclose the destruction.   (see exhibit A a copy of which is attached hereto and made part hereof as if set forth in detail}

8. That at all times relevant the individual items of the antique firearms collection was essential to the defense of each of the 32 alleged ordinance violations, in that examination of the items by the trier of fact, and the expert witness engaged by the plaintiff Gordon Anderson would demonstrate exceptions to or other defenses to the alleged ordinance violations.    (such is illustrated by the fact that Mr. Anderson unable to afford an attorney, after his retained attorney

---

(i) notifying defense counsel that material and information, described in general terms, may be inspected, obtained, tested, copied, or photographed, during specified reasonable times; and
   (ii) making available to defense counsel at the time specified such material and information, and suitable facilities or other arrangements for inspection, testing, copying and photographing of such material and information.
 (f) The State should ensure that a flow of information is maintained between the various investigative personnel and its office sufficient to place within its possession or control all material and information relevant to the accused and the offense charged.
 (g) Upon defense counsel's request and designation of material or information which would be discoverable if in the possession or control of the State, and which is in the possession or control of other governmental personnel, the State shall use diligent good-faith efforts to cause such material to be made available to defense counsel; and if the State's efforts are unsuccessful and such material or other governmental personnel are subject to the jurisdiction of the court, the court shall issue suitable subpoenas or orders to cause such material to be made available to defense counsel.
 (h) Discretionary Disclosures. Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court, in its discretion, may require disclosure to defense counsel of relevant material and information not covered by this rule.
 (i) Denial of Disclosure. The court may deny disclosure authorized by this rule and Rule 413 if it finds that there is substantial risk to any person of physical harm, intimidation, bribery, economic reprisals, or unnecessary annoyance or embarrassment resulting from such disclosure which outweighs any usefulness of the disclosure to counsel.   ….

Complaint pursuant to 42 USCA 1983 by Gordon Anderson   06/04/02   page 14

retired, was found not guilty of eleven of the ordinance violations, and the City of Chicago withdrew one of the ordinance violation charges). The examination of the destroyed evidence by the trier of fact, including the examination of the described item in exhibit b, would have impeded the prosecution of the improper ordinance violations as the trier of fact would be able to observe for itself that what was seized was benign and clothed with loaded words connoting something dangerous that had to be regulated by the City of Chicago.

9. That the spoliation of evidence,[14] and the destruction of the plaintiff's antique collection resulted in the plaintiff Anderson not being able to exhibit the evidence to the trier or fact, or an expert witness retained by him was handicapped and deprived of fair criminal trial in thirty one out of thirty two ordinance violation cases prosecuted by the City of Chicago in the Circuit Court of Cook County, Illinois.   (in spite of the spoliation the plaintiff, even though deprived of a fair trial, was successful in defending himself.] The plaintiff specifically avers that but for the spoliation of evidence he most probably would have prevailed in all the ordinance violation cases, or prosecution would have had to be abandoned.

10. That the spoliation of evidence, i.e. the antique weapons collection, and prevented the exculpatory evidence being presented to the trier of fact, and deprived the defendant of the value of the said items believed and therefore alleged by plaintiff to exceed One hundred thousand dollars.

Wherefore the plaintiff prays for judgment in an amount sufficient to reimburse him for the spoliation of evidence.

Respectfully Submitted,

---

[14] In action alleging negligent spoliation of evidence, causation must be alleged by sufficient facts to support a claim that the loss or destruction of evidence caused the plaintiff to be unable to prove an underlying lawsuit; plaintiff must demonstrate that, but for the defendant's loss or destruction of the evidence, he or she had a reasonable probability of succeeding in the underlying suit, but need not show that he or she would

14



**City of Chicago**
**Richard M. Daley, Mayor**

Department of Law

Mara S. Georges
Corporation Counsel

Suite 700
30 North LaSalle Street
Chicago, Illinois 60602
(312) 744-8791
(312) 744-1054 (FAX)
(312) 744-8677 (TTY)

http://www.ci.chi.il.us

June 5, 2001

Mr. Gordon Anderson
4049 W. Patterson
Chicago, Illinois 60641

Re:  City v. Gordon Anderson
     98 MC1 208965

Dear Mr. Anderson:

Please be advised that pursuant to Judge Tourtelot's instructions, I have inquired of the Evidence and Recovered Property Section of the Chicago Police Department as to the status of the property inventoried under inventory numbers 1937601 through 1937633. On today's date I was informed by ERPS that all items under these numbers have been destroyed. Attached you will find copies of the inventory sheets with the confiscation and destroyed date in the lower right hand corner.

Please contact me at the number below if I can be of further assistance.

Susann MacLachlan
Supervising Trial Attorney
Municipal Prosecutions Division
30 North LaSalle Street
Chicago, Illinois  60602
(312) 744-1078

enclosures

**EXHIBIT**
**A**




# Property Inventory Receipt

**CPD-34.523 (REV 3/93)**

**Date Recovered:** Day 31, Month Jul, Year 98

**Inventory No:** 1937630

**Cross Reference RD No:** 1937601-1937639 ☐ NONE

**U.S.C. ONLY:** A-G C06705

### Description of Property

| Item | Description |
|---|---|
| 1 | Colt, model USMP, Serial # A75165, unk caliber, black parker revolver, w/ steel finish, 6-inch barrel, has shot B248 |
| 2 | Gun Check CLA Not Goo |
| 3 | Reg. Rea Level 6 M4578 |

**REVOLVER**

EXHIBIT B

**Court Date:** 21 Feb 98
**Court Branch:** 29
**State Charges:** 720 5/10-16 20-040

☐ Misdemeanor ☒ Felony
☒ Recovered/Seized From - Name: ANDERSON, Gordon
☐ Owner's Name: ANDERSON, Gordon
At: 4019 W Patterson 2nd

☒ Arrested/Cited
☒ Hold for Investigation and/or Evidence

**Investigating Officer:** G. George, Star No. 017, Unit 017
**1st Officer's Name:** M. George, Star No., Unit 017
**2nd Officer's Name:** J. Patterson 2nd, Star No., Unit 017

LB43
De12422

FEB 03 1998

☒ Homicide ☐ Manslaughter ☐ Arson ☐ Narcotics & Related ☐ Medical Examiner's Property

**Property Rec'd By:** FEB 07 1998

Killed / Posted / Killed By

MAY 0 6 2000

MAY 0 4 2000

SEALED

Miemiczak

Complaint pursuant to 42 USCA 1983 by Gordon Anderson   06/04/02   page 15

## Verification.

Gordon Anderson after being duly sworn deposes and states that he has read the foregoing complaint and the factual statements made therein are true and correct

*[signature: Gordon W. Anderson]*

Subscribed and sworn before me this

June 4, 2002

*[signature]*

Notary public

My commission expires 8-17-05.

*[SEAL]*

---

have prevailed. Cosgrove v. Commonwealth Edison Co., App. 2 Dist.2000, 248 Ill.Dec. 447, 734 N.E.2d 155.